OPINION OF THE COURT
Alfred S. Robbins, J.
This proceeding was commenced by order to show cause wherein the petitioner seeks an order (1) naming a guardian ad litem for George Vogel and (2) for an order requiring the respondents Hempstead Park Nursing Home and Dr. Jona *396 than Sumner to remove the life support system of George Vogel.
This court, by order dated September 30, 1986, appointed the Hon. Henry J. Kalinowski, as guardian for George Vogel and he duly filed his "Consent to Serve” and thereafter filed the report of the guardian ad litem with this court on October 8, 1986, in which he opposed the application for an order requiring the respondents to remove the life support system from George Vogel.
The respondents named in the order to show cause did not appear in this proceeding.
On October 23, 1986 a hearing was held before this court.
At the outset, a motion was made (and granted) to amend the caption of the proceeding to correct the caption to show the petitioner to be Catherine Vogel, the wife of George Vogel.
The petitioner placed into evidence an affidavit of Dr. Jonathan Sumner, who is a specialist in internal medicine and cardiology, which affidavit was annexed to the petition of the petitioner, and which affidavit states in pertinent part:
"George Vogel suffered a major stroke that has left him in a vegetative state. He can move, but has no awareness, he further has no intellectual function.
"He is being kept alive solely by the use of a gastric tube through his nose in which material, in the consistency of an egg nog, is fed into his body.
"George Vogel is not aware of his surroundings, nor is there any possibility that he will ever be in any other state other than the vegetative state that he presently suffers * * *
"That this life support procedure in no way allows for any recovery from his vegetative state.”
The doctor, by his affidavit, concurs that all life support methods, such as a gastric tube through his nose, be discontinued.
The report of the guardian ad litem was also placed into evidence, which contains a letter from Dr. John W. Shepard, a noted neurologist, which states in pertinent part that the doctor examined George Vogel on September 29, 1986 at the Hempstead Park Nursing Home, 800 Front Street, Hemp-stead, New York:
"[A]nd reviewed the chart and examined Mr. George Vogel, a patient there. The following history is obtained:
"This patient was admitted to the Hempstead General *397 Hospital from February 16 to March 19, 1986 and at this time a diagnosis was made of cerebral vascular accident. On March 19, 1986 he was transferred to the Hempstead Park Nursing Home and he has remained there in his present condition to the present time.
"The patient when seen by me is unresponsive to oral stimuli, he does not appear to be aware of his present condition. He does not respond to any stimuli other than painful stimuli and to painful stimuli he responds only by opening his eyes. He does not give any rational response.
"The patient pupils were equal; they reacted to light, extra-ocular movements can not be tested. There is no facial response. Tongue motion can not be tested.
"Motor: The patient extremities are fixed in flexed position and he has no voluntary motor motion.
"Reflexes: The patient joints are fixed and reflexes can not be tested.
"Coordination: Coordination can not be tested.
"Impression: This patient is in a chronic vegetated state with no hope of any improvements in my opinion. This relates to a cerebral vascular accident which the patient had in February, 1986.
"This patient will be completely dependent upon others for as long as he lives. He is completely unable to do anything for himself and in my opinion he will never be able to do anything for himself’.
testimony: Mrs. Anna Guyman, the sister of Catherine Vogel and the sister-in-law of George Vogel, and Catherine Vogel, testified that in conversations with George Vogel prior to his recent illness, that he (George Vogel) did not wish to be kept alive by having tubes inserted into his body and that he would not wish to be kept alive solely by artificial means. Testimony was also offered by Lola Martin, a person who testified that she has known Catherine and George Vogel for approximately seven years and likewise testified that as a result of conversations that she had had with George Vogel before his illness, that he would not want to be kept alive by having tubes inserted into his body or by any other extraordinary means.
The guardian ad litem, Henry Kalinowski, testified as the guardian of George Vogel and by his testimony opposed the application to have the tubes by which he is fed removed from George Vogel. He testified that he had visited George Vogel in the hospital and that in viewing the patient he observed that *398 the patient was breathing on his own, that his breathing was not labored, his eyes were closed and his body motionless. There was a nasal gastric tube inserted through the nose and used for the purpose of feeding. This was the only supportive device in use and the only device ever used other than a catheter, used in the elimination of urine, which is inserted in all comatose patients. He testified further that Mr. Vogel is comatose generally, but at times is semicomatose; that he cannot take food orally and all feeding is through the nasal gastric tube. He pointed out further that Mr. Vogel is not brain-dead and that his brain stem is operative and that he has motor function and that his comatose condition cannot be labeled irreversible. He pointed out further that Dr. Sumner, whose affidavit is in evidence, states that Mr. Vogel is not terminally ill and further testified that he questioned Dr. Sumner as to whether feeding a patient would be considered ordinary or extraordinary, and Dr. Sumner indicated that feeding a patient is ordinary, which is extended to every patient. As aforesaid, the entire report of the guardian ad litem was placed in evidence and thus has the same force and effect for the purpose of this decision as oral testimony. The guardian ad litem’s contention is that the condition of Mr. Vogel is not dissimilar to a multitude of others located in nursing homes or elsewhere who have suffered strokes or have become so senile that they are unable to care for themselves. Such persons are likewise carried from bed to recliner, bathed, fed, clothed and generally aided in every facet of life. He, therefore, raises the question for policy consideration as to the standards to be applied prior to granting such applications as the one before this court.
From all of the evidence before this court, I find that this patient is not terminally ill, is not brain-dead; that the patient due to illness is not able to feed himself. In essence, if the respondents were ordered to stop feeding Mr. Vogel by means of the gastric nasal tube the court would, in effect, order the respondents to allow the patient to die of starvation.
This, then, raises a policy consideration. A review of the adjudicated cases in this area discloses authority for the removal of life support systems in those circumstances where it is found that the patient is being kept alive by extraordinary means. In those cases the patients are described as brain-dead and are terminally ill with no hope of recovery and are being kept alive solely by artificial means.
It is the judgment of this court that a distinction must be *399 drawn between those who are unable to care for themselves due to infirmities of illness, age or other physical disabilities and those who are brain-dead or terminally ill, without hope of recovery and are being kept alive solely by use of artificial means made available by the techniques of modern medicine and technology.
In the former, it is a function of humanity to care for those who are unable to care for themselves by reason of illness, age or infirmities. This function of humanity springs not from a consideration of the quality of the life of the ill, but rather from the human spirit. It is the quintessential difference between man (homo sapiens) and the lower forms of animal life.
Our humane society has not yet embraced a concept of sympathetic euthanasia. It is, therefore, inconceivable that the concept of death by starvation should be embraced and established as a policy of this State.
Under all the present circumstances of this case, the application of the petitioner for an order directing the respondents to remove the gastric nasal food tube from George Vogel is denied. This decision, however, does not preclude a de novo application predicated upon a change in circumstances consistent with adjudicated authority.